UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ERICKA SANCHEZ,**
**Plaintiff,**

No. 5:15-CV-982 DAE

v.

**PRUDENTIAL INVESTMENT**
**MANAGEMENT, INC.,**
**Defendant.**

**and**

**THE PRUDENTIAL INSURANCE**
**COMPANY OF AMERICA,**
**Defendant/Third-Party Plaintiff,**

v.

**ERIKA SANCHEZ, LAURE HOFFMAN**
**MIDDLETON, and MITZI A. VIAL,**
**Third-Party Defendants**

### THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE DAVID A. EZRA:

Pursuant to Federal Rule of Procedure 56(a), Third-Party Defendants Laure Hoffman Middleton ("Mrs. Middleton") and Mitzi A. Vial ("Mrs. Vial") (collectively, "Movants") respectfully move for summary judgment on the ground that there is no genuine dispute as to any material fact, and Movants are entitled to judgment as a matter of law on their respective requests for declaratory judgment.

# I.
## STATEMENT OF THE CASE

The purpose of this case is to find and declare the rightful beneficiary(ies) of certain death benefits under a Servicemembers' Group Life Insurance policy maintained by Mr. Sebastian Hoffman, deceased ("Mr. Hoffman").  (*See* Ex. 1, *see generally* Prudential Comp., Dkt. # 6.)

Plaintiff/Third-Party Defendant Erika Sanchez ("Ms. Sanchez") filed her *Original Complaint and Application for Temporary Restraining Order and Injunctive Relief* on November 10, 2015, naming "Prudential Investment Management, Inc." as the Defendant.  (Sanchez Compl., Dkt. # 1.)  Ms. Sanchez's *Motion for Temporary Restraining Order* was denied by Order dated November 11, 2015.  (Dkt. # 3.)  On January 12, 2016, The Prudential Insurance Company of America (improperly named as "Prudential Investment Management, Inc.) ("Prudential") filed its *Answer* to Ms. Sanchez's Complaint, and further asserted its own *Counterclaim and Third-Party Complaint For Interpleader*, impleading Ms. Middleton and Ms. Vial into this lawsuit as claimants to the Policy.  (Prudential Compl., Dkt. # 6.)  On February 5, 2016, Ms. Vial and Ms. Middleton each timely filed an *Answer* and additionally asserted a *Request for Declaratory Relief*.  (Vial/Middleton Compls., Dkts. # 9, 10.)  Prudential filed *Answers* to the *Requests for Declaratory Relief* of Movants on March 18, 2016.  (Dkts. # 17, 18.)

By Order dated September 28, 2016, the Court granted Prudential's *Motion for Deposit and Interpleader*; the funds at issue were deposited into the registry of the Court, and Prudential was dismissed from this suit.  (Dkt. # 32.)

Pursuant to a *Joint Proposed Scheduling Order* filed collectively by all parties, the Court issued a *Scheduling Order* on March 11, 2016, setting deadlines for, among other things, completion of discovery and filing of dispositive motions.  (Dkts. # 15, 16.).  Upon Motions of

Movants, the deadline to complete discovery was extended by Orders dated August 15, 2016 and January 18, 2017.  (Dkts. # 29, 40, 43.)  This Court's order of January 18, 2017 set March 6, 2017 as the deadline for dispositive motions.  (Dkt. # 43.)  As of the filing of this Motion, no trial date has been set.

## II.
### STATEMENT OF UNDISPUTED MATERIAL FACTS

Movants are the sisters of Mr. Hoffman.  (Exs. 19, 20.)  Ms. Sanchez and Mr. Hoffman met on or about June 1, 2011, were married on July 1, 2011, separated on December 12, 2012, and were divorced on September 30, 2013.  (Ex. 17 at 3:17-21, Ex. 18, 19)

At all relevant times, Mr. Hoffman was a servicemember in the United States Army Reserves and maintained the Policy- a Servicemembers' Group Life Insurance ("SGLI") policy, Group Policy No. G-32000, with a gross death benefit of $400,000.00.  (*See generally* Ex. 1; Sanchez Compl. ¶ 3, Dkt. # 1, Prudential Compl. ¶ 3, Dkt. # 6, Vial/Middleton Compls. ¶ 31, Dkts. # 9, 10.)  Servicemembers make beneficiary designations using the SGLV 8286 form provided by the Department of Veteran's Affairs ("VA").  (Ex. 12 at 21); *see* http://www.benefits.va.gov/INSURANCE/updatebene.asp#sgli).

By form dated June 4, 2011, Mr. Hoffman made a valid designation of Movants as beneficiaries of the Policy, with each to receive fifty-percent of the death benefit, respectively ("the June 2011 Certificate").  (Ex. 3, *see* Ex. 13 at 27:10-15, 35:22, 36:1-22, 37:7-9, 49:20-21, 77:9-13, Ex. 16 at 4:17-21.)  This form is complete and correct, and both Mr. Hoffman and the personnel clerk or unit administrator who received the form digitally signed and dated it.  (Id.)  At the time of death, this form was in Mr. Hoffman's personnel file.  (Ex. 16 at 4:17-21, 6:22, 7:1-5.)

A second SGLV 8286 form dated August 6, 2011, purportedly executed by Mr. Hoffman, names Ms. Sanchez as a beneficiary of seventy-five percent of the death benefit, Ms. Middleton as a beneficiary of twenty-five percent of the death benefit, and Ms. Vial as alternate beneficiary of one-hundred percent of the death benefit ("the August 2011 Certificate"). (Ex. 4.) This form was not filled out completely or correctly, does not contain any information for the personnel clerk or unit administrator, nor does it contain a date of receipt. (Id., Ex. 13 at 10:6-15, 50:7-14, 52:4-22, 53:1.) At the time of death, this form was not in Mr. Hoffman's personnel file. (Ex. 16 at 4:3-23.) Furthermore, Movants contend that the August 2011 Certificate contains numerous defects and abnormalities suggesting this form was altered and/or is otherwise invalid, as discussed more fully herein below.

A third SGLV 8286 form dated September 30, 1975, purportedly executed by Mr. Hoffman, names Ms. Sanchez as a beneficiary of one-hundred percent of the death benefit ("the Sanchez Certificate"). (Ex. 5.) This form was not filled out completely or correctly, the date is incorrectly stated as Mr. Hoffman's birthdate, and it does not contain a date of receipt. (Id., Ex. 13 at 9:18-20, 11:8-11.) At the time of death, this form was not in Mr. Hoffman's personnel file. (Ex. 16 at 4:3-23.) Furthermore, Movants contend that the Sanchez Certificate contains numerous defects and abnormalities suggesting this form was altered and/or is otherwise invalid, as discussed more fully herein below.

Mr. Hoffman passed away on July 10, 2015. (Ex. 2.) Five days later, on the same day the death was certified (and before the Certificate of Death had even been issued), Ms. Sanchez filed a claim for the death benefit through Prudential. (*Compare* Ex. 2 *with* Ex. 6.) Movants each filed a claim for the death benefit through Prudential in August 2015. (Ex. 7, Ex. 8.)

Prudential notified Ms. Sanchez by letter dated October 13, 2015 that she was not the beneficiary of the Policy. (Ex. 11.) The letter briefly explained defects in the SGLV 8286 forms that named her as a beneficiary. (Id., *see* Ex. 4, Ex. 5.) Thereafter Ms. Sanchez initiated this suit against Prudential, and Prudential impleaded the Movants as claimants under the Policy.

### III.
### MOVANTS' REQUESTS FOR DECLARATORY RELIEF

Ms. Middleton and Ms. Vial request the following declaratory relief and orders:

I. A judgment is entered declaring that the June 2011 Certificate is valid and effectively designates Movants as beneficiaries of the Policy, with each to receive fifty-percent of the net death benefit, respectively. (Ex. 3, Vial/Middleton Compls. ¶ 32, Dkts. # 9, 10.)

II. A judgment is entered declaring that the August 2011 Certificate and the Sanchez Certificate are defective, and are ineffective to alter or change the designation of Ms. Vial and Ms. Middleton as beneficiaries of the Policy. (Exs. 4, 5; Vial/Middleton Compls. ¶ 33, Dkts. #9, 10.)

III. A judgment is entered declaring that Ms. Middleton is entitled under the Policy and applicable law to fifty-percent (50%) of the net death benefit. (Middleton Compl. ¶ 32, Dkt. # 10.)

IV. A judgment is entered declaring that Ms. Vial is entitled under the Policy and applicable law to fifty-percent (50%) of the net death benefit. (Vial Compl. ¶ 32, Dkt. # 9.)

V. An order is entered directing the Clerk of the Court to disperse fifty-percent (50%) of the funds held in the registry of this Court (deposited by Prudential), together with applicable interest, if any, to Ms. Middleton by a date certain. (Middleton Compl. ¶ 37-38, Dkt. # 10.)

VI. An order is entered directing the Clerk of the Court to disperse fifty-percent (50%) of the funds held in the registry of this Court (deposited by Prudential), together with applicable interest, if any, to Ms. Vial by a date certain. (Vial Compl. ¶ 37-38, Dkt. # 9.)

VII.    An order is entered restraining Ms. Sanchez from instituting any action against Movants to recover the death benefit, or any other action against Movants associated with the Policy.  (Vial/Middleton Compls. ¶ 39, Dkts. # 9, 10.)

VIII.   An order is entered awarding Movants payment of their reasonable and necessary attorney's fees and costs incurred in the bringing of this action, and setting a hearing for further proceedings on this matter as necessary.  (Vial/Middleton Compls. ¶ 40, Dkts. # 9, 10.)

## IV.
### MOTION FOR SUMMARY JUDGMENT

SGLI policies are governed by the statutory framework found at 38 U.S.C.S. 1965, *et sec*.  The VA purchased the SGLI policy from Prudential, Prudential issued the Policy, and the VA publishes forms and a handbook for servicemembers regarding their SGLI benefits and handles certain administration tasks.  (*See* Ex. 1, Ex. 12.); *see also Coomer v. U.S.*, 471 F.2d 1, 2 (5th Cir. 1973).  Therefore, the controlling sources for deciding questions of beneficiary designations are the Policy documents from Prudential, the VA handbook and forms, 38 USCS 1965, *et sec*., and the relevant jurisprudence interpreting these sources.  The procedural requirements contained in these sources are strictly construed, on the basis that "[i]t is so difficult to reconstruct a person's donative intentions after his death …."  *Prudential Ins. Co. v. Parker*, 840 F.2d 6, 7 (7th Cir. 1988); *see Coomer v. U.S.*, 471 F.2d at 2; *Dohnalik v. Somner*, 467 F.3d 488, 490 (5th Cir. 2006).

**I.  Because there is no question that the June 2011 Certificate is the only designation of beneficiary form that evidences that it was received by Mr. Hoffman's uniformed service, and the only form found in Mr. Hoffman's personnel file, Movants are entitled to judgment as a matter of law.**

### A. *Beneficiary designation forms become effective on the date they are received by the servicemember's uniformed service.*

The Policy mandates that, for a servicemember in Mr. Hoffman's position, a written beneficiary designation form be "made to the member's uniformed service", and must be received prior to the member's death, otherwise it will not take effect. (Ex. 1 at rec'd pg. 5.) Similarly, 38 U.S.C.S. § 1970 provides that SGLI benefits shall be paid to the beneficiary(ies) "designated by a writing received prior to death" by the servicemember's uniformed service. The SGLI handbook from the VA ("the Handbook") expressly states that a designation of beneficiary form "must be submitted to the member's uniformed service because a beneficiary designation is not effective until it is received by the uniformed service." (Ex. 12 at 21.) The Policy further declares that such written beneficiary designation form "shall be effective as of the date of such receipt." (Ex. 1 at rec'd pg. 5.) In other words, in the absence of evidence of the date of receipt of the form, the form is not effective per the terms of the Policy, the Handbook, or 38 U.S.C.S. § 1970. *See Prudential Ins. Co. of Am. v. Ligon*, 915 F. Supp. 1183, 1187 (M.D. Ala. 1996)(finding that, where the SGLV form was not dated, it "was never 'received by the uniformed service' within the meaning of the statute.").

The same procedural formalities required to designate beneficiaries are required to change beneficiaries. *Dohnalik v. Somner*, 467 F.3d at 490; *Prudential Ins. Co. v. Smith*, 762 F.2d at 478. Once a beneficiary is designated, "that designation can be changed only by a document and procedure of like dignity. Since Congress clearly intended to require strict compliance with the statute in designating the beneficiary there is no doubt that it also intended to impose similar requirements when the beneficiary is changed." *Coomer v. U.S.*, 471 F.2d at 5–6.

"[Receipt] occurs when the serviceman hands the writing naming the beneficiary to the person whom the [uniformed service] has put in charge of receiving and maintaining the beneficiary designation forms." *Coomer v. U.S.*, 471 F.2d at 5.  For SGLI policies, substantial compliance with the receipt requirement is not sufficient.  *Prudential Ins. Co. v. Parker*, 840 F.2d at 7.  Therefore, the Court's initial inquiry should determine whether there is evidence of strict compliance with the Policy, the Handbook, and the relevant statutory provisions for receipt.  This necessarily entails determining whether there is evidence of the date each of the three forms at issue were received by Mr. Hoffman's uniformed service, *vel non*.

Mr. Richard Teniente was Mr. Hoffman's unit administrator between 2011 and 2015.  (Ex. 13 at 6:16-22.)  Mr. Teniente testified that the unit administrator is to date the beneficiary designation forms upon receipt.  (Ex. 13 at 26:13-22; 27:1.)  In the older version of the SGLV 8286 form (used for the June 2011 Certificate), there was a place for the clerk or unit administrator to actually sign, but in the updated version (used for the August 2011 Certificate and the Sanchez Certificate), there is no place for the clerk or unit administrator to sign, but instead there is an area to be completed by the "Branch of Service," to include the name of the personnel clerk, their rank, title, or grade, contact telephone/email, address, and, of course, the date.  (Ex. 13 at 32:1-17, *compare* Ex. 3 *with* Ex. 4 *and* Ex. 5.)  Mr. Teniente stated that this information is required to "ensure that you witnessed the soldier produce this document.  You witnessed the soldier fill this out, fill it in and complete it.  So [the form] is accessible to the soldier.  It just should not be accessed solely by the soldier."  (Ex. 13 at 44:2-12.)  He testified that the unit administrator is to review the forms for errors.  (Id. at 29:13-18.)  "You're not leaving this desk or this office until we've completed the form, meaning you signed off on it, you've seen me sign off on it,

everything's checked in the appropriate box, and then we can move forward. That is a completed-would be a completed form." (Id. at 48:2-10.)

Mr. Teniente's testimony regarding his procedure for handling beneficiary designation forms comports with the formal requirements for same. The Handbook requires that, once the form has been submitted by the servicemember, "[t]he uniformed service should immediately date and certify it as received. It should promptly be placed in the member's personnel file." (Ex. 12 at 21.)

### B. Because there is evidence the June 2011 Certificate was received by Mr. Hoffman's uniformed service, and there is no such evidence as to the other two forms, the June 2011 Certificate is the only form that became effective.

From the face of the June 2011 Certificate, it is evident that the form was fully and properly completed, dated, signed, and received by Mr. Hoffman's uniformed service on June 4, 2011. (Ex. 3.) It therefore became effective on June 4, 2011, the date of receipt. Mr. Teniente testified repeatedly that the June 2011 Certificate was completed fully and properly and was valid. (Ex. 13 at 27:10-15, 35:22. 36:1-22, 37:7-9, 49:20-21, 77:9-13.) Therefore, in order to change the beneficiary designation from Movants in co-equal shares, there must be evidence that Mr. Hoffman strictly complied with the formality of a written designation so indicating, and that such written designation was received by his uniformed service before his death. *See Coomer v. U.S.*, 471 F.2d at 5–6.

The area to be completed by the Branch of Service on the August 2011 Certificate is completely blank. (Ex. 4.) That same area on the Sanchez Certificate has some information typed in, but is not dated. (Ex. 5.) There is no evidence to determine when (or whether) the August 2011

Certificate or the Sanchez Certificate were received by Mr. Hoffman's uniformed service, *vel non*. (Ex. 13 at 10:6-15, 50:7-14, 52: 4-22.)  There is no evidence that Mr. Hoffman ever handed either of these forms to the person whom was in charge of receiving and maintaining the beneficiary designation forms, as "receipt" is defined.  *See Coomer v. U.S.*, 471 F.2d at 5.  Absent evidence of the date of "receipt," neither the August 2011 Certificate nor the Sanchez Certificate are valid or effective to change the beneficiary designation made by Mr. Hoffman in the June 2011 Certificate.

### C. Only the June 2011 Certificate was in Mr. Hoffman's personnel file.

Further concerning is the fact that neither the August 2011 Certificate nor the Sanchez Certificate were in Mr. Hoffman's personnel file, according to the testimony of Joseph Samuel Brown, the Casualty Assistance Office that investigated "the controversy surrounding the beneficiary designation of [Mr. Hoffman]…."  (Ex. 16 at 3:13-18, 4:3-23, 6:25, 7:1-5.)  The Handbook expressly states that "[o]nly the latest beneficiary designation in the member's personnel file will be considered valid."  (Ex. 12 at 21.)

Had the August 2011 Certificate or the Sanchez Certificate been received by the unit administrator, Mr. Teniente testified that they would then have been uploaded into Mr. Hoffman's online database, what he referred to as "iPERMS."  (Ex. 13 at 33:5-13.)  Mr. Brown stated that he could not testify on what dates those forms were received because they were not filled out correctly, and the unit administrator did not know anything about the forms.  (Id. at 9:12-18, 6:9-25.)

Despite the mandate of the Handbook, several cases have held that a designation form can, in some circumstances, be valid even when it is not in a servicemember's personnel file at the time of death; these cases are distinguishable from the instant case.

In *Coomer*, a Fifth Circuit decision, the standard designation form was not available in Vietnam where the servicemember was stationed, so the personnel clerk generated a form and used it for the unit, with approval of his superiors. *Coomer v. U.S.*, 471 F.2d at 2. Upon the servicemember's return state-side, the form remained with the servicemember in his sealed personnel file. Id. It was discovered by his parents after his death in his footlocker. Id. at 3. The personnel clerk testified unequivocally that the servicemember completed the form, that he received it, and that they both signed it. Id. at 5. The *Coomer* court relied heavily on this fact in concluding that the uniformed service had in fact "received" the form; what the service did with it after that (ie., placing it in the personnel file and returning it to the servicemember), could not extinguish the validity of the designation. Id. at 6.

In *Perez*, a Ninth Circuit decision, the servicemember made an initial designation of beneficiary in favor of his wife. *Prudential Ins. Co. v. Perez*, 51 F.3d 197, 198 (9th Cir. 1995). Two months later, he completed a form to designate his father as the beneficiary. Id. The evidence showed that the form was handed by the servicemember to the person designated by the uniformed service to received such forms, and, as in *Coomer*, that administrator actually signed the form and indicated it had been "received." Id. The form was then returned to the servicemember for an unknown reason and found amongst his belongings after his death. Id. The *Perez* court relied heavily on the reasoning of the *Coomer* court, holding that because the evidence undisputedly showed the uniformed service had "received" the form, it was valid and effective even if not in the servicemember's personnel file at the time of death. Id. at 199.

Conversely, in the instant case, there is nothing on the face of either the August 2011 Certificate nor the Sanchez Certificate to indicate that a personnel clerk or unit administrator ever

"received" either form. (*See* Ex. 4, Ex. 5.) In fact, Mr. Teniente testified he had no knowledge of either form, and further, that he followed a certain procedure that would necessarily entail verifying the form was properly completed, filling in his information in the "Branch of Service" section, dating the form, and uploading it into the servicemember's online database. (Ex. 13 at 8:7-10, 9:1-4, 9:18-20, 10:6-15, 11:8-11, 18:3-22, 26:13-22, 27:1, 29:13-18, 32:1-17, 33:5-13, 44:2-12, 48:2-10, 50:7-14, 52:4-22, 53:1.)  Because neither the August 2011 Certificate not the Sanchez Certificate are not properly filled out and are incomplete- specifically as to the required information for the administrator receiving the forms, these forms are not only inconsistent with the procedure followed by Mr. Teniente, suggesting they were never "received," they cannot be saved by the holdings of *Coomer* or *Perez* for their lack of being in Mr. Hoffman's personnel file.

Because the June 2011 Certificate is the only designation of beneficiary form that both evidences that it was received by Mr. Hoffman's uniformed service, and the only form found in Mr. Hoffman's personnel file, it is the only form that became effective and valid. This is the conclusion of not just Movants, but also Mr. Brown and, to some extent, Prudential. (Ex. 11, Ex. 16 at 4:21-23, 5:3-14, 6:9-25, 7:1-5, 9:14-18.) Accordingly, no genuine issues of fact exist and Movants are entitled to judgment as a matter of law.

**II. Because the Sanchez Certificate and the August 2011 Certificate contain numerous defects and abnormalities, their authenticity cannot be verified and they are invalid.**

Looking just at the face of the Sanchez Certificate, the following defects and abnormalities are apparent:

1. It does not reflect a date the form was received by Mr. Teniente, nor is there any way to verify that Mr. Teniente filled in any of the information appearing in the section "For Branch of Service Use Only."

2. In section 5, the typed date next to Mr. Hoffman's Social Security number is his birthday, not the date it was signed.

3. In section 5, the typed date next to Mr. Hoffman's Social Security number appears misaligned within the form.

4. Servicemembers generally write dates as year/month/day, and indeed, that is how Mr. Hoffman wrote dates in other forms we have from his Prudential file, but the date of birth on this form in section 5 is written as month/day/year- consistent with how non-military/civilians write dates.  (*Compare* Ex. 5 *with* Exs. 9, 10 at Box 17, Ex. 14 at "Teniente Depo. Ex. # 6.")

5. The font size and spacing of the Social Security number and the date next to the signature in section 5 are misaligned within the form and of different sizes.

6. The "X" next to "Name or update my SGLI beneficiary" in section 2 is not aligned with the box.

7. The numeral "1" in Mr. Hoffman's Social Security number is a different font from the numeral "1" in Ms. Sanchez's Social Security number. In Mr. Hoffman's, it looks like "1," while in Ms. Sanchez's, it looks like "1."

8. The numeral "7" in Ms. Sanchez's Social Security number is a different font from the numeral "7" in Mr. Hoffman's birthdate.  In Mr. Hoffman's birthdate, it looks like "7," while in Ms. Sanchez's Social Security number, it looks like "7."  (Ex. 5.)

Mr. Teniente also noted that the sizing and font of the Social Security number next to the birthdate "does not match what other forms I guess automatically put in there. It's not the right font." (Ex. 13 at 18:22, 19:1-2.) Mr. Teniente further noted that the formatting of the entries on the August 2011 Certificate and the Sanchez Certificate do not match, even though they are the same version of the 8286 form. "It's not even the right format based off the previous forms that we've filled out for other soldiers, to include my own." (Ex. 13 at 20:4-13.) He specifically noted that the Social Security number in the upper right-hand corner of the first page "is a different format from what that Social is on other produced documents…. It's the same form as [the August 2011 Certificate], same year, same type, but the Social Security number is not the same format, it's not the same font." (Ex. 13 at 53:11-19). He further noted "that Social in block 5 does not match the font or format for the date, which is the soldier's date of birth, 1975." (Ex. 13 at 54:5-7.) The importance of the mismatched fonts on this form cannot be overemphasized. As Mr. Teniente testified, in the military, uniformity and consistency are standard- "the forms and the fonts match." (Ex. 13 at 57:6-9.)

Looking just at the face of the August 2011 Certificate, the following defects and abnormalities are apparent:

1. None of the information in the "Branch of Service" section is filled in, including the all-important date of receipt.
2. There is no Social Security number for Ms. Middleton in Section 3.
3. There is no Social Security number for Ms. Vial in Section 3.
4. In section 3, the words "Lump sum" appear in rows that have no other information.
5. The font sizes in section 3 don't match.

6. Servicemembers generally write dates as year/month/day, and indeed, that is how Mr. Hoffman wrote dates in other forms we have from his Prudential file, but the date handwritten on this form in Section 5 is written as month/day/year- consistent with how non-military/civilians write dates. (*Compare* Ex. 4 *with* Exs. 9, 10 at Box 17, Ex. 14 at "Teniente Depo. Ex. # 6.")

7. Section 4 is filled out when it isn't supposed to be (and was not filled out on the Sanchez Certificate).

8. None of the checks in Section 4 are aligned with the boxes.

Because of these abnormalities and defects, it is not possible to verify that the August 2011 Certificate and the Sanchez Certificate are valid. Accordingly, they cannot be used to establish conclusively that Mr. Hoffman intended to change the beneficiary(ies) of his SGLI policy. This is the conclusion of not just Movants, but also Mr. Brown and Prudential. (Ex. 11, Ex. 16 at 4:21-23, 5:3-14, 6:9-25, 7:1-5, 9:14-18.) As such, they are not effective or valid, and Movants should be granted judgment as a matter of law.

## PRAYER

Laure Middleton and Mitze Vial, Movants herein, respectfully pray this Court find that no genuine issue of material fact exists and they are entitled to judgment as a matter of law (1) that the June 2011 Certificate is valid and effectively designates each of the Movants as co-equal beneficiaries of the net death benefit, and (2) that the Sanchez Certificate and the August 2011 Certificate are invalid, ineffective, and of no force or effect, consistent with the arguments and authorities contained herein and the summary judgment evidence attached hereto.

Movants further pray that, upon making such findings, the Court enter orders (1) directing the Clerk of the Court to disperse fifty-percent (50%) of the funds held in the registry of this Court (deposited by Prudential), together with applicable interest, if any, to Ms. Vial by a date certain, (2) directing the Clerk of the Court to disperse fifty-percent (50%) of the funds held in the registry of this Court (deposited by Prudential), together with applicable interest, if any, to Ms. Middleton by a date certain, (3) restraining Ms. Sanchez from instituting any action against Movants to recover the death benefit, or any other action against Movants associated with the Policy, and (4) setting a date for further proceedings on Movants' request for attorney's fees if and as necessary.

        Respectfully submitted,

        JAMIE GRAHAM & ASSOCIATES, PLLC
        310 S. St. Mary's St., Suite 2500
        San Antonio, Texas 78205
        Tel: (210) 308-6448
        Fax: (210) 308-5669

        By: /s/Sarah Anne Lishman
            State Bar No. 24086267
            sarahanne@jamiegrahamlaw.com
            Attorney for Movants

## Certificate of Service

I hereby certify that pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing was served on all counsel of record on March 6, 2017 as follows:

**_Via Facsimile: 210-354-2227 and email: r.amsberry@amsberrylaw.com_**
THE AMSBERRY LAW FIRM, PLLC
Russell J.G. Amsberry
1370 Pantheon Way, Suite 110
San Antonio, Texas 78232
Attorney for Erika Sanchez

        /s/Sarah Anne Lishman
        Attorney for Movants

**APPENDIX:**
**SUMMARY JUDGMENT EVIDENCE**

The following Exhibits are part of the Appendix to this Motion and are incorporated herein by reference as follows:

Exhibit 1: SGLI policy, Group Policy No. G-32000 ("the Policy")

Exhibit 2: Certificate of Death

Exhibit 3: Servicemembers' Group Life Insurance Election and Certificate form dated June 4, 2011

Exhibit 4: Servicemembers' Group Life Insurance Election and Certificate form dated August 6, 2011

Exhibit 5: Servicemembers' Group Life Insurance Election and Certificate form dated September 30, 1975

Exhibit 6: Claim for Death Benefits form of Erika Zabrina Sanchez

Exhibit 7: Claim for Death Benefits form of Ms. Middleton

Exhibit 8: Claim for Death Benefits form of Ms. Vial

Exhibit 9: Emergency Contact form dated January 8, 2011

Exhibit 10: Emergency Contact form dated August 6, 2011

Exhibit 11: Claim denial letter from Prudential to Ms. Sanchez dated October 13, 2015

Exhibit 12: Servicemembers' and Veterans' Group Life Insurance Handbook

Exhibit 13: December 19, 2016 Deposition of Richard Teniente

Exhibit 14: December 19, 2016 Deposition Exhibits of Richard Teniente

Exhibit 15: Letter from Mr. Teniente dated September 1, 2015

Exhibit 16: August 9, 2016 Deposition of Joseph Brown

Exhibit 17: Deposition of Ms. Sanchez

Exhibit 18: Affidavit of Ms. Vial

Exhibit 19: Affidavit of Ms. Middleton