UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ERIKA SANCHEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | No. 5:15–CV–982–DAE |
| § | |
| PRUDENTIAL INVESTMENT § | |
| MANAGEMENT, INC., § | |
| § | |
| Defendant, § | |
| § | |
| and § | |
| § | |
| THE PRUDENTIAL INSURANCE § | |
| COMPANY OF AMERICA, § | |
| § | |
| Defendant/Third-Party Plaintiff, § | |
| § | |
| vs. § | |
| § | |
| ERIKA SANCHEZ, LAURE § | |
| HOFFMAN MIDDLETON, and § | |
| MITZI A. VIAL, § | |
| § | |
| Third-Party Defendants. § | |

ORDER (1) DENYING SANCHEZ'S MOTION FOR SUMMARY JUDGMENT
(DKT. # 50), AND (2) DENYING MIDDLETON AND VIAL'S
<u>MOTION FOR SUMMARY JUDGMENT (DKT. # 48)</u>

Before the Court are two motions: (1) a Motion for Summary

Judgment filed by Erika Sanchez ("Plaintiff" or "Sanchez") on March 6, 2017

(Dkt. # 50), and (2) a Motion for Summary Judgment filed by Laure Hoffman

1

Middleton ("Middleton") and Mitzi A. Vial ("Vial") (collectively, "Third-Party Defendants") on March 6, 2017 (Dkt. # 48). Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing.

After careful consideration of the memoranda filed in support of and in opposition to the motions, the Court—for the reasons that follow—(1) **DENIES** Sanchez's Motion for Summary Judgment (Dkt. # 50), and (2) **DENIES** Middleton and Vial's Motion for Summary Judgment (Dkt. # 48).

## BACKGROUND

The Court incorporates herein the factual and procedural background as summarized in its September 28, 2016 Order Granting Prudential's Unopposed Motion for Interpleader Relief ("the September Order"). (See Dkt. # 32 at 2–4.)[1] The facts below are recited to the extent necessary in understanding this disposition.

Pursuant to the Servicemen's Group Life Insurance Act ("SGLIA"), Prudential funded a Servicemembers' Group Life Insurance ("SGLI") policy ("the Policy") to the United States Department of Veterans Affairs through Prudential's Office of Servicemembers' Group Life Insurance ("OSGLI"). ("McKoy Aff.," Dkt. # 30-1 ¶ 3; Dkt. # 30-2, Ex. A (copy of the Policy).) Broadly, the SGLIA,

---

[1] In the September Order, Prudential was terminated as a party to this case. (Dkt. # 32 at 4 n.1, 8.) The only remaining parties are Plaintiff Sanchez and Third-Party Defendants Middleton and Vial.

codified at 38 U.S.C. § 1965, et seq., is a statute whose "'paramount consideration' is to assure that the proceeds of its insurance policies flow only to the designated beneficiary." Prudential Ins. Co. of Am. v. Goodman, 895 F. Supp. 137, 140 (S.D. Tex. 1995) (quoting Prudential Ins. Co. of Am. v. Smith, 762 F.2d 476, 480 (5th Cir. 1985)). This goal is accomplished by a provision that "mandates that proceeds are to be distributed to the designated beneficiary above all other recipients." Id. (citing 38 U.S.C. § 1970(a) (the order of precedence provision)). In the present case, Sebastian Theodore Hoffman ("the Insured"), who was covered under the Policy, died on July 10, 2015. ("Death Certificate," Dkt. # 30-3, Ex. B; see also McKoy Aff. ¶ 5.) A Death Benefit of $399,971.00—the amount of the Policy minus premiums owed[2]—became payable to the Insured's beneficiaries. (McKoy Aff. ¶ 6.)

Prudential's OSGLI does not collect or maintain beneficiary designations for SGLI policies; rather, the applicable branch of service performs this task. (Id. ¶ 7.) Beneficiary designations are noted on a form entitled "SGLV 8286." (Dkt. # 48-12 at 22 (excerpt of Department of Veterans Affairs manual).) After the Insured's death, it is undisputed that the OSGLI received three different

---

[2] The amount of the Death Benefit has been reduced since then by $11,968.00, which this Court awarded as reasonable attorneys' fees to Prudential's counsel in January 2017 as a result of Prudential's successful and unopposed interpleader motion. (See Dkt. # 42 at 9–17.)

3

SGLI Election and Certificates from the United States Army Reserves from Sanchez, Middleton, and Vial.  (McKoy Aff. ¶ 8.)  Middleton and Vial are the Insured's sisters.  (See Dkt. # 48-18; Dkt. # 48-19.).  As for Sanchez, the record shows Sanchez met the Insured on or around June 2011, they were married on July 1, 2011, the Insured filed for divorce on June 17, 2013, and the divorce was finalized September 30, 2013.  ("Sanchez Dep.," Dkt. # 48-17, Ex. 17 at 3:17–21; Dkt. # 48-18; Dkt. # 48-19.)

    First, the OSGLI received a June 4, 2011 certificate designating the Insured's sisters, Middleton and Vial, as co-equal primary beneficiaries of the Death Benefit ("the June 2011 Certificate").  (Id. ¶ 8(a); "2011 Certificate," Dkt. # 30-4, Ex. C.)  The June 2011 Certificate includes the Insured's electronic signature and indicates that it was received and/or accepted by the appropriate branch of service.  (Id.)  An August 6, 2011 certificate designates Sanchez, the Insured's former spouse, as primary beneficiary of 75% of the Death Benefit and Middleton as the primary beneficiary of the remaining 25% of the Death Benefit ("the August 2011 Certificate").  (McKoy Aff. ¶ 8(b); "August 2011 Certificate," Dkt. # 30-5, Ex. D.)  The August 2011 also named Vial as a secondary beneficiary of 100% of the Death Benefit.  (Id.)  However, there is no indication anywhere on the certificate that the August 2011 Certificate was submitted, received, and/or accepted by the applicable branch of service.  (Id.)

4

The third and final certificate, purportedly dated September 30, 1975, designates Sanchez as the sole primary beneficiary of the Death Benefit ("the Sanchez Certificate"). (McKoy Aff. ¶ 8(c); "Sanchez Certificate," Dkt. # 30-6, Ex. E.) The Sanchez Certificate includes what purports to be the Insured's signature, but the Insured's date of birth is listed as the date he signed the Sanchez Certificate. (Id.) Richard G. Teniente ("Teniente"), the Insured's Army Reserve Unit Administrator, is listed as the personnel clerk who allegedly completed the Sanchez Certificate with the Insured. (Id.) However, the Sanchez Certificate does not bear Teniente's signature, and in a subsequent letter to Prudential, Teniente stated that he is unable to validate the Sanchez Certificate because it appears to have been altered. (McKoy Aff. ¶ 8(c).)

On July 15, 2015, five days after the Insured's death, Sanchez submitted a claim for the Death Benefit to Prudential's OSGLI. (Dkt. # 30-7, Ex. F.) On August 3, 2015, Vial submitted her claim for the Death Benefit. (Dkt. # 30-8, Ex. G.) On August 9, 2015, Middleton submitted her claim for the Death Benefit. (Dkt. # 30-9, Ex. H.) Prudential could not determine the proper payee based on these competing certificates and claims. (See McKoy Aff. ¶ 10.) Thus, on November 10, 2015, Sanchez sued Prudential and initiated the present case, asserting an implied cause of action under 38 U.S.C. § 1970(a), and seeking an affirmative injunction that Prudential pay her the Death Benefit. (Dkt. # 1.) On

January 12, 2016, Prudential timely filed its Answer and Third-Party Complaint for Interpleader.  (Dkt. # 6.)  Prudential named Sanchez, Middleton, and Vial as Third-Party Defendants.  (Id.)

As referenced above, on September 12, 2016, Prudential filed an unopposed Motion to Deposit and for Interpleader Relief (Dkt. # 30), which this Court granted on September 28, 2016 (Dkt. # 32).  Prudential then deposited the Death Benefit in the Court registry on or around October 17, 2016 (see Dkt. # 33 at 2–3, 5; "Malyk Decl.," Dkt. # 33-1 ¶ 22), and was dismissed from the case with prejudice (Dkt. # 32 at 8).  On January 12, 2017, the Court also granted Prudential's motion for reasonable attorneys' fees.  (Dkt. # 33 (motion); Dkt. # 42 (order).)

Now, the remaining parties – Plaintiff Sanchez and Third-Party Defendants Middleton and Vial – move for summary declaratory judgment to determine the designated beneficiary (or beneficiaries) on the Insured's Policy in order to receive the Death Benefit.  On March 6, 2017, Sanchez filed her summary judgment motion (Dkt. # 50), as did Middleton and Vial (Dkt. # 48).  On March 21, 2017, Sanchez filed a response to Middleton and Vial's summary judgment motion.  (Dkt. # 53.)  These motions are addressed below.

LEGAL STANDARD

I.   Summary Judgment Under Rule 56

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). "Substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not

make credibility determinations or weigh the evidence." Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

Because these are cross-motions for declaratory summary judgment on a circumscribed issue, the Court's principal task is to decide whether there are genuine issues of material fact as to the determination of the designated beneficiary (or beneficiaries) for the Insured's SGLI Policy.

Sanchez argues that there are no genuine fact issues that she is the designated beneficiary who should receive 100% of the Death Benefit according to his last intended designation made on the Sanchez Certificate.  (Dkt. # 50 at 5.)  Even though the Sanchez Certificate allegedly erroneously contains the Insured's date of birth as the date signed, Sanchez's motion argues – among other things –

that the certificate accurately reflects the November 2011 address where Sanchez and the Insured lived, and therefore, the Sanchez Certificate was executed subsequent to the August 2011 certificate.  (Id. at 3.)  By contrast, Middleton and Vial argue that there are no genuine fact issues that the June 2011 Certificate is the only valid SGLV 8286 designation form because both the August 2011 Certificate and the Sanchez Certificate allegedly contain "numerous defects and alterations," making them invalid.  (Dkt. # 48 at 3–4.)

"In order to make life insurance coverage available to members of the uniformed services on active duty, particularly in combat zones, Congress in 1965 enacted the SGLIA."  Ridgway v. Ridgway, 454 U.S. 46, 50 (1981).  The SGLIA directs "the Administrator of Veterans' Affairs to purchase coverage from one or more qualified commercial insurers," such as Prudential here, "instead of offering coverage by the United States itself."  Id. at 51 (citing 38 U.S.C. § 766).  The SGLIA establishes a specified "order of precedence" to determine payment beneficiaries upon the death of a service member with an SGLI policy.  Id. at 52.  For purposes of the instant case, only the first part of the provision directing order of precedence is relevant, since there are several SGLV 8286 designation forms at issue here.  This provision states that the proceeds of a policy are paid first to such "beneficiary or beneficiaries as the member . . . may have designated by [an appropriately filed] writing received prior to death" with the military services.

38 U.S.C. § 1970(a); see also id. (citing previous version of section 1970(a)); Smith, 762 F.2d at 478 (same).

The Fifth Circuit "has recognized that, under the pertinent administrative regulations, a change of beneficiary under the SGLIA 'will take effect only if it is in writing, signed by the insured, and received prior to the death of the insured.'" Dohnalik v. Somner, 467 F.3d 488, 490 (5th Cir. 2006) (quoting Smith, 762 F.2d at 478); see also Ruiz v. Prudential Ins. Co. of Am., 317 F. App'x 412, 414 (5th Cir. 2009) (similarly noting that "designated beneficiaries can only be changed if the proper office receives, prior to the death of the insured, an appropriate signed document changing the beneficiary" (internal quotations and citation omitted)).  And even before the Supreme Court's Ridgway decision in 1981, the Fifth Circuit had determined that an SGLIA beneficiary "designation can be changed only by a document and procedure [complying with the statutory formalities]." Coomer v. United States, 471 F.2d 1, 6 (5th Cir. 1973).

Here, there are three competing beneficiary designation forms: the June 2011 Certificate, the August 2011 Certificate, and the Sanchez Certificate. Although the parties attempt to argue that it is undisputed as a matter of law that one certificate is valid above the other deficient ones, the Court disagrees.  The parties have provided competent, contravening summary judgment evidence that demonstrates there are genuine disputes of material fact surrounding, *inter alia*, the

following issues: (1) whether the June 2011 Certificate can be valid if it was filled out and submitted on an allegedly "outdated" or previous version of the 8286 form; (2) whether the August 2011 Certificate and Sanchez Certificate can be considered "received" by the Army Reserves unit administrator, where there is varying information on each of these certificates as to the intake process and receipt date, if any, of the forms, including Teniente's credentials being on one form, but without his signature;[3] (3) whether all three certificates were properly made a part of the Insured's permanent file prior to his death, or "permed"; (4) whether discrepancies and "abnormalities" in font sizes and checked boxes indicate any or all of the certificates have been altered, and even so, if such alterations invalidate any of the certificates automatically; and (5) whether the allegedly erroneous date on the Sanchez Certificate as the Insured's date of birth, as well its "civilian format," invalidates the Sanchez Certificate, alleged to be the last and operative designation by Sanchez.

These disputed fact issues directly affect the determination as to whether a change of beneficiary or beneficiaries took effect, or even whether the "initial" June 2011 designation was proper under the statute. See 38 U.S.C.

---

[3] This disputed issue is particularly apparent where Middleton and Vial concede that "several cases have held that a designation form can, in some circumstances, be valid even when it is not in a servicemember's personnel file at the time of death," but then attempt to distinguish those cases from the present situation. (See Dkt. # 48 at 10–11 (citing cases).)

§ 1970(a) (setting forth beneficiary designation requirements); see, e.g., Dohnalik, 467 F.3d at 490 (discussing administrative regulations and requirements to change SGLI beneficiaries).  Further, contrary to the parties' assertions, the deposition testimony of Teniente (the Insured's unit administrator) and Joseph Brown (the Human Resource Command representative) does not demonstrate that there are no genuine issues of material fact that one, and only one, certificate – if at all – is valid and supersedes the other two.  Simply, neither Sanchez as movant, nor Middleton and Vial as movants, have demonstrated "*the absence* of a genuine issue of material fact."  See Celotex Corp., 477 U.S. at 323 (emphasis added).

Accordingly, summary judgment is improper because the court may not make credibility determinations or weigh the evidence with respect to the three imperfect beneficiary designation certificates before it.  See McData Servs. Corp., 646 F.3d at 326.  The decision to not grant summary judgment in light of these contested fact issues is further supported by established case law surrounding the SGLIA, which calls for strict construction of the statute and its administrative regulations.  See Dohnalik, 467 F.3d at 490 (citing approvingly the Eighth Circuit's decision in Prudential Ins. Co. v. Hinkel, 121 F.3d 364 (8th Cir. 1997), and the Eleventh Circuit's decision in Lanier v. Traub, 934 F.2d 287 (11th Cir. 1991), both of which state that strict construction of the designee provisions is

necessary under the SGLIA to ease uncertainty and effectuate Congressional intent).

## CONCLUSION

For the reasons set forth, the Court (1) **DENIES** Sanchez's Motion for Summary Judgment (Dkt. # 50), and (2) **DENIES** Middleton and Vial's Motion for Summary Judgment (Dkt. # 48). Because there are genuine issues of material fact surrounding the determination of the beneficiary (or beneficiaries) of the Death Benefit under the Insured's Policy, which preclude summary judgment, **the case will be set for jury trial by separate order.**

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, October 10, 2017.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE